UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Pedro Filipinga

v.

Case No. 1:26-cv-720-JL-AJ
Opinion No. 2026 DNH 165

David Wesling, et al.

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Pedro Filipinga seeks immediate release from his ongoing immigration detention after an Immigration Judge denied his release in two custody redetermination (bond) hearings. Filipinga, in his petition for writ of habeas corpus, challenges the constitutional sufficiency of the bond hearings under the Due Process Clause of the 14th Amendment to the Constitution. Respondents moved to dismiss the petition, arguing that the IJ's determination was constitutionally sufficient, that this court lacks jurisdiction to review the IJ's order under 8 U.S.C. § 1226(e), and that Filipinga failed to exhaust his administrative remedies by appealing the Immigration Judge's decision to the Bureau of Immigration Appeals.

Having reviewed the parties' briefing, the court finds, *inter alia*, that the IJ did not violate Filipinga's due process rights when she found by a preponderance of the evidence that he was a flight risk.

## I. Background

Filipinga is an Angolan national. He entered the United States in April 2022 and was apprehended by Border Patrol agents in Del Rio, Texas. The Department of Homeland Security released him shortly thereafter and placed him in an alternatives-to-

detention program involving weekly biometric reporting. DHS un-enrolled him for a violation before re-enrolling him a month later. DHS removed him from the program as an "absconder" in September 2022 without re-detaining him.[1] Filipinga claims that his violations involved faulty monitoring equipment, which he reported to DHS. He states that DHS removed him from the program without re-issuing him new equipment and did not require further check-ins.[2]

After over three years, in February 2026, DHS re-detained Filipinga in the parking lot of a church. He challenged his detention in this court, filing a habeas petition in late February. The court ordered the respondents to provide him with a bond hearing before an Immigration Judge, which took place in March 2026. The Immigration Judge denied bond, finding that Filipinga was a flight risk because his Form I-213[3] stated that he had multiple alternatives-to-detention program violations in 2022 and had attempted to flee from immigration officers when they arrested him in 2026.[4]

In August 2026, Filipinga requested a new bond hearing based on changed circumstances, namely two new sponsors who had agreed to support him—one, a pastor who knew him personally and the second a person who he had spoken to on the phone—and new evidence showing that he had not actually attempted to flee when immigration officers arrested him in 2026. The evidence that he had not actually attempted to flee consisted of the affidavits of two people who had watched surveillance footage from the church parking lot who expressed their opinions that he did not appear to be attempting to

---

[1] Record of Deportable Alien (doc. no. 7-1) at 3.
[2] Pet. (doc. no. 1) at 4.
[3] An immigration document also known as a Record of Deportable/Inadmissible Alien.
[4] Mar. 10, 2026 Bond Hearing Audio at 10:00-10:30.

flee, as well as photo stills from the surveillance footage, and an affidavit from Filipinga himself explaining that he had not attempted to evade arrest. He also explained in his affidavit that his 2022 alternatives-to-detention program violations were due to faulty monitoring equipment which he reported to DHS. The IJ found that "a second custody redetermination hearing is not warranted as the Respondent has not made 'a showing that [his] circumstances have changed materially since the prior bond redetermination,'"[5] and "even if the [Immigration] Court were to find that the Respondent had established a material change in circumstances [it] would still find that the Respondent is a flight by a preponderance of the evidence."[6]

Filipinga challenges the IJ's findings in this court.[7] The court bases its analysis on the audio recordings of the bond hearings, the evidence provided to the Immigration Judge in both hearings, and the Immigration Judge's written decision.

## II. Jurisdiction

This court may grant a writ of habeas corpus to a person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Although 8 U.S.C. § 1226(e) provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole," numerous district courts, including this one, have found that a district court may review an Immigration Judge's decision to deny bond to determine "whether the petitioner received the constitutional

[5] Bond Order (doc. no. 1-1) at 3 (citing 8 C.F.R. § 1003.19(e)).
[6] Id. at 4.
[7] Pet. (doc. no. 1).

due process to which he was entitled." *Massingue v. Streeter*, 2020 WL 1866255, at *4 (D. Mass. Apr. 14, 2020).

As noted above, Filipinga challenges the constitutional sufficiency of his bond hearing, arguing, *inter alia*, that the evidence before the Immigration Judge was insufficient, as a matter of law, to support a finding by a preponderance of evidence that he was a flight risk, as required by *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021). As it did previously in *Makuraza v. Wesling, et al*., 2026 WL 1068066 (D.N.H. Apr. 20, 20216), this court joins others in finding that "[a]lthough the court may not review the Immigration Judge's discretionary judgment, the Immigration Judge does not have discretion to fail to apply the burden of proof that due process requires." *See Mayancela Mayancela v. FCI Berlin, Warden*, 2025 WL 3215638 at *5 (D.N.H. Nov. 18, 2025) (McCafferty, J.); *see also Massingue*, 2020 WL 1866255 at *4; *Dos Reis v. Vitello*, 2025 WL 1043434 at *2 (D. Mass. Apr. 8, 2025).

## III. Administrative exhaustion

"There are two species of exhaustion: statutory and common-law. The former deprives a federal court of jurisdiction, while the latter 'cedes discretion to a [federal] court to decline the exercise of jurisdiction.' " *Brito v. Garland*, 22 F.4th 240, 255 (1st Cir. 2021) (quoting *Anversa v. Partners Healthcare Sys., Inc*., 835 F.3d 167, 174–76 (1st Cir. 2016). Since no statute requires exhaustion, "sound judicial discretion governs." *Morgan v. Garland*, 120 F.4th 913, 927 (1st Cir. 2024) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). In making the decision, the court "must balance the interest of the individual in retaining prompt access to a federal judicial forum against

countervailing institutional interests favoring exhaustion." *Anversa*, 835 F.3d at 176 (quoting *McCarthy*, 503 U.S. at 146). "[I]f the situation is such that 'a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim,' exhaustion may be excused even though 'the administrative decisionmaking schedule is otherwise reasonable and definite.' " *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997) (citing *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992).

The particular facts and circumstances of Filipinga's case warrant waiver of exhaustion under that standard. Filipinga is suffering irreparable harm in the form of loss of liberty while detained. *Brito*, 22 F.4th at 256 ("[E]xhaustion might not be required if [the petitioner] were challenging her incarceration ... or the ongoing deprivation of some other liberty interest." (quoting *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986))). Considering the potential length of detention for an appeal of the Immigration Judge's flight risk finding, the court finds that Filipinga is not required to exhaust his administrative remedies under the facts and circumstances of this case.

## IV. Analysis

Although this court has authority to consider Filipinga's claim, that authority is "limited." *Mayancela Mayancela*, 2025 WL 3215638, at *5 (citing *Diaz Ortiz v. Smith*, 384 F. Supp. 3d 140, 143 (D. Mass. 2019)). "To obtain habeas relief, [a petitioner] must show that the [Immigration Judge] failed to place the burden of proof on the Government to show…flight risk by a preponderance of the evidence." *Id.* He may do so by "either point[ing] to the language of the [IJ's] opinion or demonstrate[ing] that 'the evidence itself could not – as a matter of law – have supported' the [IJ's] decision to deny bond.' "

*Id.* Although "Immigration Judges generally must sufficiently explain their reasoning to permit appellate or judicial review of their decisions... an Immigration Judge 'need not spell out every last detail of [her] reasoning where the logical underpinnings are clear from the record.' " *Id.* at 6 (citing *Barnica-Lopez v. Garland*, 59 F.4th 520, 530 (1st Cir. 2023) and *López-Gómez v. Bondi*, 154 F.4th 1, 4 (1st Cir. 2025)).

Filipinga makes several arguments related to his bond hearings. He does not challenge the IJ's finding that he failed to show a material change in circumstances. First, he argues that the IJ failed to apply the correct burden of proof because she relied on "disputed and unreliable allegations" in the Form I-213 rather than the sworn affidavits provided by the petitioner. Next, he claims that the record evidence of flight risk was "neither probative nor specific," primarily because the I-213 document on which the Immigration Judge relied was uncorroborated and was contradicted by other evidence on the record. Third, he argues that the Immigration Judge failed to provide a clear and meaningful rationale for her decision. Finally, he argues that the Immigration Judge's "preconceptions and personal bias displaced a neutral assessment of the evidence."[8]

The IJ found that Filipinga had not established a material change in circumstances that would warrant a second custody redetermination hearing.[9] A material change finding is required before an IJ may conduct a second bond hearing. *See* 8 C.F.R. § 1003.19 ("After an initial bond redetermination, an alien's request for a subsequent

---

[8] Pet. (doc. no. 1) at 16. The petitioner does not provide any specific evidence as to any personal or agency-wide prejudices that the IJ may have held, other than the fact that, in the face of evidence in his favor, the IJ denied Filipinga bond. The court does not find the argument convincing.

[9] Bond Hearing Order (doc. no. 1-1) at 4.

bond redetermination … shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination."); see also *In Re: Waldemar Harvey Quijano-Mojica*, : AXXX XX4 296 - ATL, 2008 WL 4065959 (BIA Aug. 7, 2008) (remanding to IJ to make a finding on materially changed circumstances before conducting bond hearing); *In Re: Albin Antonio Hernandez*, : AXXX XX3 345 - POM, 2010 WL 1607048, at *1 (BIA Mar. 19, 2010) ("After an initial bond redetermination hearing, an Immigration Judge's jurisdiction to make a subsequent bond redetermination is limited to the situation in which an alien shows that 'circumstances have changed materially since the prior bond redetermination.'") (quoting 8 C.F.R. § 1003.19(e)). Filipinga does not challenge this finding. Without a finding of materially changed circumstances, the IJ lacked the jurisdiction to conduct a second bond hearing, and Filipinga's current detention is based on his first bond hearing, conducted in March 2026. Nevertheless, because the federal respondents argue that only the second bond hearing controls Filipinga's detention, and Filipinga challenges both, the court analyzes both bond hearings.

***First bond hearing.*** At the March bond hearing, Filipinga did not present sworn testimony regarding his alternatives-to-detention program violations, did not have evidence of sponsors, and did not have affidavits contradicting the narrative in the I-213 form regarding his attempted flight during arrest. The IJ explained her reasoning while giving her oral order at the hearing, clearly stating her consideration of evidence for and against allowing petitioner's request for bond.[10] *Mayancela Mayancela*, 2025 WL

[10] Mar. 10, 2026 Bond Hearing Audio at 10:00-10:30.

3215638, at *6 (Although "Immigration Judges generally must sufficiently explain their reasoning to permit appellate or judicial review of their decisions... an Immigration Judge 'need not spell out every last detail of [her] reasoning where the logical underpinnings are clear from the record.'"). She weighed Filipinga's ties to his community, including his U.S. citizen child, but found compelling the alternatives-to-detention program violations, especially the attempt to flee described in the I-213.[11] During a bond hearing an Immigration Judge may consider "any attempts by the alien to flee prosecution or otherwise escape from authorities." *See In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). "The Immigration Judge may choose to give greater weight to one factor over others, as long as the decision is reasonable." *Id.* While not all factfinders would draw the IJ's conclusions here, the evidence of flight—including the violations and an attempt to flee upon arrest—is sufficient for a reasonable judge to find flight risk. *See Mayancela Mayancela*, 2025 WL 3215638, at *6 (finding of flight risk supported by totality of evidence where "immediately prior to his arrest and current detention, [the petitioner] attempted to flee from a CBP agent").

With the same qualification about other reasonable factfinders, the evidence is also sufficiently reliable. As the respondents point out, the First Circuit Court of Appeals has not made a specific finding as to the reliability of Enforce Alien Removal Module ("EARM") summaries, including I-213s. *Rosa v. Bondi*, 144 F.4th 37, 43 (1st Cir. 2025). The cases on which the petitioner relies, in which district courts have found I-213 forms or police reports unreliable, discuss the forms' use at the clear and convincing standard,

[11] *Id.* at 10:30.

rather than the lower preponderance of the evidence standard required for a finding of flight risk. Without more direct guidance from the First Circuit on the reliability of EARM or I-213 documents, the court does not find that the document at issue here is unreliable such that an IJ may not base her flight risk finding on it.

***Second bond hearing.*** The record evidence available at the second bond hearing was much the same except that Filipinga provided a sworn affidavit explaining that his alternative to detention program violations were due to faulty equipment, which he reported to ICE, and explaining that, contrary to the account in the I-213, he had not attempted to flee when immigration officers arrested him in February 2026. He also provided, *inter alia*, evidence of two bond sponsors, one of whom he knew personally and one he did not; two letters from people who had watched surveillance footage of his February 2026 arrest and stated that he did not appear to be attempting to flee; and photographic stills from the footage.

The IJ, again recognizing Filipinga's support and ties to the community in her order, and noting the new evidence in his favor, again found that his alternatives-to-detention program violations and the attempt to flee described in the I-213, along with the fact that he has been ordered removed, outweighed the new evidence he had provided.[12] She discounted one sponsor because the sponsor did not know Filipinga personally.[13] And although she did not explicitly discuss her process of weighing the evidence, making a determination on flight risk would have required the IJ to weigh the credibility of the evidence provided by Filipinga against the accounts in the I-213. *See Mayancela*

[12] Bond Order (doc. no. 1-1) at 3-4.
[13] *Id.* at 4.

*Mayancela*, 2025 WL 3215638, at *6 (Although "Immigration Judges generally must sufficiently explain their reasoning to permit appellate or judicial review of their decisions... an Immigration Judge 'need not spell out every last detail of [her] reasoning where the logical underpinnings are clear from the record.'"). It was reasonable for the IJ to give more weight to the I-213 than to the petitioner's own account of the same events, or to the accounts of two people who had watched security footage that was not available to the IJ herself. A petitioner's "mere disagreement with the IJ's reasonable alternative weighing of the evidence is insufficient to conclude that his bond hearing was constitutionally defective." *Lopez Flores v. Brackett*, No. 1:26-CV-94-PB-TSM, 2026 WL 1179959, at *4 (D.N.H. Apr. 30, 2026) (Barbadoro, J) (citing *Makuraza v. Wesling*, No. 1:26-CV-122-JL-AJ, 2026 WL 1068066, at *3 (D.N.H. Apr. 20, 2026)).

## V. Conclusion

Because Filipinga has not demonstrated that the Immigration Judge failed to apply the constitutional standard in his bond redetermination hearing, the court denies his request for supplemental habeas relief.[14] The clerk shall enter judgment and close the case.

SO ORDERED.

Joseph N. Laplante
United States District Judge

Dated: November 23, 2026
CC: Counsel of record

[14] Pet. (doc. no. 1).